UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET R. STEPHENS,<br>  5210 Windmill Lane<br>  Columbia, MD 21044<br><br>         Plaintiff,<br><br>     v.<br><br>STEVE PRESTON,<br>  Secretary, U.S. Dept. of Housing<br>  and Urban Development<br>  451 7th Street, S.W.<br>  Washington, D.C. 20410,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)       Civ. Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1.)     This is an action by Plaintiff, Margaret R. Stephens, an African American career employee with the Department of Housing and Urban Development ("HUD") who presently holds the position of Senior Program Advisor (GS-15) in the Office of the Chief Procurement Officer ("OCPO"). Prior to being involuntarily detailed to that non-supervisory position in August of 2004 – immediately after having participated in protected EEO activity – Ms. Stephens occupied the position of Director of the Documents Management Division in HUD's Office of Administration.

2.)     The Director position, unlike her present one, was high-profile and included supervisory and budget management duties. As Senior Program Advisor, however, Ms. Stephens has been stripped of managerial responsibilities and assigned to a position lacking

1

duties commensurate with her background and accomplishments, and without professional exposure inside or outside of HUD.

3.) Through this action, Plaintiff seeks redress for defendant's discrimination and retaliation against her through its indefinite detail of her, without an effective date for the completion of her detail or a completed personnel action permanently reassigning her, to a non-supervisory, materially less desirable position, as well as for the discriminatory hostile work environment to which she was subjected by defendant prior to the detail. It arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

4.) To remedy these and other unlawful actions, Plaintiff seeks: a.) a declaration that defendant unlawfully subjected her to discrimination and retaliation; b.) an injunction reinstating Plaintiff to her position as Director of the Document Management Division or an equivalent managerial position and enjoining defendant from further violations of Plaintiff's civil rights; c.) record correction to expunge her detail and the resulting removal from managerial duties from agency records; d.) compensatory damages; and e.) an award of her attorneys' fees and costs.

**Parties, Jurisdiction, and Venue**

1.) Plaintiff, Margaret R. Stephens, is and was at all times relevant to this Complaint employed by the Department of Housing and Urban Development in its Washington, D.C., Headquarters office. Ms. Stephens is an African American woman who participated in protected EEO activity by filing informal and formal EEO complaints in June and July of 2004, and subsequently amending and pursuing those complaints.

2.) Defendant Steve Preston is the Secretary of the U.S. Department of Housing and Urban Development, and as such is the official who heads the federal agency for whom Ms. Stephens worked when the actions at issue occurred. HUD employs Plaintiff and engaged in the

acts of discrimination and retaliation that are the subjects of this action.  Defendant is sued in his official capacity only.

3.)     Jurisdiction of this Court is based upon 28 U.S.C. §1332 and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)).  Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because defendant's acts occurred in this judicial district, where Plaintiff is employed.

## STATEMENT OF THE CASE

### Defendant's Discriminatory and Retaliatory Detail of Plaintiff

5.)     Plaintiff served as the Director of the Documents Management Division (GS-15) in the Office of Administrative and Management Services from August of 2002 until August of 2004, when she was involuntarily detailed to the Office of the Chief Procurement Officer ("OCPO") by her supervisor, David Palladino.  Although the detail was supposed to be for 60 days, at which time Plaintiff was to return to the Director position, she has remained on detail to this day, without an without an effective date for the completion of her detail or a completed personnel action reassigning her to that position.

6.)     Mr. Palladino, who is white, was the Director of the Office of Administrative and Management Services during the time period at issue.

7.)     On June 1, 2004, shortly before she was detailed to OCPO, Plaintiff presented Mr. Palladino with a memorandum in which she expressed her opposition to the disparate treatment and abusive work environment to which he was subjecting her.  Plaintiff asked Mr. Palladino to treat her with the same respect he showed the other Division Directors, all of whom were white males.

3

8.) In a meeting with Plaintiff that same day, Mr. Palladino angrily responded to the memorandum by telling Plaintiff that he viewed it as an attack, and that he would respond with an attack. He then threatened to have Plaintiff reassigned.

9.) Plaintiff sought informal counseling from HUD's Office of Departmental Equal Employment Opportunity the same day. On July 7, 2004, she filed a formal administrative EEO complaint in which she raised a claim of discriminatory hostile work environment. Mr. Palladino's treatment of her was the subject of that complaint.

10.) The very next month, Mr. Palladino approved a 60 day detail assignment of Plaintiff to the position of Senior Program Advisor in the Programs Support Division of the OCPO.

### The Agency's Pretextual Reasons For Detailing Plaintiff

11.) According to Mr. Palladino, Plaintiff's assistance was urgently needed by the OCPO to complete contract awards before the close of the fiscal year on September 30, 2004. Due to the supposed exigency of the circumstances in OCPO, Plaintiff was only given four days' notice that she would be detailed.

12.) By contrast, Annette Hancock, the Director of the Programs Support Division in OCPO who became Plaintiff's supervisor on the detail, testified in her administrative affidavit that five employees had already been detailed to OCPO to work on the end-of-year contract awards. By the time Plaintiff was identified as a potential detailee, the OCPO did not need assistance with those awards, and therefore did not have an urgent need for Plaintiff's help.

13.) In fact, Plaintiff was not given substantive contracting work until approximately two weeks after her detail began; even then, the contracting projects she was assigned were not due to be awarded before the close of the fiscal year.

14.) Despite the fact that Plaintiff had over 20 years of procurement experience at the time of the detail, the Personnel Action Request requesting approval for the detail assignment stated that the purpose of the detail was to "broaden her experience and enable her to gain a greater experience and understanding of Federal Contracting and how OCPO interacts support with various programs within the Department."

15.) The Personnel Action Requests for the other five employees who were temporarily detailed to OCPO reflected that they were being brought in to assist OCPO in accomplishing fiscal year-end contract awards.

16.) When Plaintiff learned of the language in her Personnel Action Request, which seemed to reflect something other than a temporary detail, she sought to amend her EEO complaint to include a claim over the disparity between the written justification and the reason she had been given for the detail. Despite the fact that the agency never acted on her amendment request, the claim was investigated administratively.

### The Detail Was to a Materially Less Desirable Position

17.) Although the Plaintiff's detail was only supposed to last for 60 days, Plaintiff remains in the Senior Program Advisor position to this day, without an effective date for the completion of her detail or a completed personnel action reassigning her to that position.

18.) At the time Plaintiff was first detailed in 2002, she was sent to the Programs Support Division in the OCPO. She remained there until approximately September of 2006, at which point her detail was transferred to the Office of Field Policy and Management. Plaintiff was then sent back to OCPO's Information Technology and Financial Support Division in November of 2007. The entire time, she has occupied the job title of Senior Program Advisor, and has performed unclassified duties.

19.) In her previous position as Director of the Documents Management Division, Plaintiff supervised approximately 21 employees at the first or second level and oversaw an annual operating budget in excess of $73 million dollars. She was responsible for the development, direction, management, administration, and evaluation of service functions for two branches, the Distribution and Mail Branch and the Records and Directive Branch. As Director, Plaintiff managed the provision of a wide range of support services including customer service, duplication management, records, micrographics, directive systems, document distribution services, mail and print services, and library services to senior level officials in the various HUD program offices. She routinely interacted with high-level agency officials such as Assistant Secretaries and Program Directors, and with persons in the Secretary's Office and the Chief Executive Office

20.) Plaintiff has performed none of those duties or comparable duties since she began her detail assignment in August of 2004, and her professional exposure has been greatly reduced.

21.) By removing Plaintiff from her supervisory position and detailing her to a materially less desirable position, without an effective date for the completion of her detail or a completed personnel action reassigning her to that position, defendant materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities, both within and outside of HUD.

22.) On information and belief, Plaintiff is the only person to have been detailed to OCPO in the fall of 2004 who has not been returned to her previous position. She is also the only Division Director from Mr. Palladino's staff who was involuntarily detailed to a non-supervisory position.

**The Hostile Work Environment**

23.)     Prior to being detailed to OCPO, Plaintiff was subjected to a hostile work environment by Mr. Palladino on account of her race and sex.

24.)     Mr. Palladino singled Plaintiff out for demeaning and disparaging treatment, frequently yelling at and humiliating her and threatening her with disciplinary action.  On several occasions in meetings with Plaintiff, Mr. Palladino became enraged, screamed at Plaintiff, pointed his finger at her, and intimidated her to the point that it caused her to fear for her safety.

25.)     Mr. Palladino's treatment of Plaintiff was confirmed in the administrative Report of Investigation by Sonya Nathan, a management assistant to Mr. Palladino whose desk was situated directly outside of his office.

26.)     Ms. Nathan testified in her sworn affidavit that she heard Mr. Palladino direct Plaintiff to "shut up" on numerous occasions.  She further testified that Mr. Palladino used to scream at Plaintiff so viciously that she would pray for the Lord to help Plaintiff.

27.)     Ms. Nathan also attested to the fact that Mr. Palladino did not treat the white male Directors under his supervision in a similar fashion.

28.)     On one occasion, during a managers' meeting on May 28, 2004, Mr. Palladino raised his voice at Plaintiff and several times directed her to "shut up!"  Later that day, Mr. Palladino called Plaintiff back to his office where he continued to verbally assault her, angrily instructing her to "shut up whenever [he is] talking!"

29.)     Mr. Palladino made unreasonable and degrading demands such as advising Plaintiff that she had to report to his office within three minutes when he called her for meetings, and that she could only speak to him if she was sitting down.  He also undermined her managerial authority with her staff, and refused to assist her with filling needed positions.

30.)	Mr. Palladino's hostile and abusive actions toward Plaintiff, when taken together, were sufficiently severe and pervasive to materially alter the terms and conditions of Plaintiff's employment.  She not only felt humiliated and intimidated by his constant verbal abuse, she lived in fear that he would take unwarranted adverse action against her or even physically harm her.

## Exhaustion of Administrative Remedies

31.)	On or before June 1, 2004, Plaintiff timely initiated the informal EEO process with respect to the hostile work environment to which she was subjected by Mr. Palladino.  She timely filed a formal complaint of discrimination on July 7, 2004 and amended that complaint on August 31, 2004 to include a claim of reprisal over her involuntary detail assignment.  Plaintiff requested another amendment to her complaint on September 17, 2004 over the Personnel Action Request effectuating her detail to the OCPO, which contained language that differed from the reason she had been given for her detail assignment.  In those submissions and the ensuing investigation of her formal complaint, Plaintiff timely challenged the employment actions that are the subjects of the instant Complaint.

32.)	On December 1, 2004, Plaintiff requested a hearing before the Equal Employment Opportunity Commission ("EEOC").  Although the EEOC found that Plaintiff had established a <u>prima facie</u> case of reprisal in her claim over the detail assignment, it dismissed her complaint at the dispositive motion stage, prior to discovery being taken.  Plaintiff appealed on the written record to the Office of Federal Operation, which issued a decision upholding the dismissal of her complaint on March 28, 2008.

33.)	By and through these actions, Plaintiff timely exhausted the administrative remedies available to her.

8

**COUNT I**
**Retaliation – Involuntary Detail**

34.) Plaintiff repeats the allegations contained in paragraphs 1 through 33 above, as though fully set forth here.

35.) Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3)) when, on June 1, 2004, she objected to her supervisor treating her disparately from her white male colleagues and filed an informal administrative EEO complaint over his subjection of her to a discriminatory hostile work environment. Plaintiff filed a formal complaint over the same claim on July 7, 2004.

36.) Defendant retaliated against Plaintiff on account of her protected activity by causing her to be involuntarily detailed to a non-supervisory position on or about August 30, 2004.

37.) Plaintiff's involuntary detail, which has continued to this day without an effective date for the completion of her detail or a completed personnel action reassigning her to that position, resulted in the loss of her supervisory duties, professional exposure and opportunity. The detail also harmed her professional reputation within HUD and the larger federal community. By and through this action, defendant subjected Plaintiff to a materially adverse employment action that may have dissuaded a reasonable person from making or supporting a charge of discrimination.

38.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3), by retaliating against Plaintiff in the manner described above.

39.) Defendant's violation of Title VII has also caused Plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT II
### Race Discrimination – Involuntary Detail

40.) Plaintiff repeats the allegations contained in paragraphs 1 through 39 above, as though fully set forth here.

41.) Plaintiff is an African American female. Her former supervisor and Division Director colleagues in the Office of Administrative and Management Services are all white males.

42.) Defendant discriminated against Plaintiff on account of her race by causing her to be involuntarily detailed to a non-supervisory position on August 26, 2004, where she remains to this day, without an effective date for the completion of her detail or a completed personnel action reassigning her to that position.

43.) Plaintiff was the only Division Director from the Office of Administrative and Management Services to be involuntarily detailed to a non-supervisory position.

44.) Plaintiff's detail was an adverse action by defendant that resulted in the loss of her supervisory duties, professional exposure and opportunity, and harmed her professional reputation within HUD and the larger federal community.

45.) By taking the foregoing actions, defendant discriminated against Plaintiff on account of her race and violated Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)).

46.) Defendant's violation of Title VII has also caused Plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT III
### Sex Discrimination – Involuntary Detail

47.) Plaintiff repeats the allegations contained in paragraphs 1 through 46 above, as though fully set forth here.

48.) Plaintiff is an African American female. Her former supervisor and Division Director colleagues in the Office of Administrative and Management Services are all white males.

49.) Defendant discriminated against Plaintiff on account of her sex by causing her to be involuntarily detailed to a non-supervisory position on August 26, 2004, where she remains to this day, without an effective date for the completion of her detail or a completed personnel action reassigning her to that position.

50.) Plaintiff was the only Director from the Office of Administrative and Management Services to be involuntarily detailed to a non-supervisory position.

51.) Plaintiff's detail was an adverse action by defendant that resulted in the loss of her supervisory duties, professional exposure, and opportunity, and harmed her professional reputation within HUD and the larger federal community.

52.) By taking the foregoing actions, defendant discriminated against Plaintiff on account of her sex and violated Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)).

53.) Defendant's violation of Title VII has also caused Plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT IV
### Discriminatory Hostile Work Environment

54.) Plaintiff repeats the allegations contained in paragraphs 1 through 53 above, as though fully set forth here.

55.) Defendant discriminated against Plaintiff on account of her race and sex by subjecting her to a hostile and abusive work environment by the actions alleged earlier in this complaint including, but not limited to: screaming and yelling at her; physically intimidating her; humiliating her; demeaning her; threatening to take disciplinary action against her; undermining her managerial authority; and refusing to assist her with filling vacant positions under her supervision.

56.) By taking the foregoing actions, defendant subjected Plaintiff to a hostile and abusive work environment on account of her sex and race that was sufficiently severe and pervasive to materially alter the terms and conditions of her employment. In doing so, defendant violated Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)).

57.) Defendant's violation of Title VII caused Plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, harm to her professional reputation, and loss of enjoyment of life.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, Margaret R. Stephens, respectfully requests that the Court enter judgment in her favor and award her the following relief:

A. An Order declaring that defendant violated her civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and enjoining further discrimination and retaliation against her.

B. An order reinstating her to the position of Director of the Documents Management Division in the Office of Administration or an equivalent managerial position;

C. Record correction to remove all documents reflecting Plaintiff's detail and the resulting removal of her supervisory duties, which began in August of 2004;

D. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of future career opportunities, loss of professional reputation, and loss of enjoyment of life caused by the agency's actions;

E. Pre- and post-judgment interest;

F. The attorneys' fees and costs incurred by Plaintiff; and

G. Such other relief as may be just and appropriate.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable.

                Respectfully submitted,

                /s/
            _____
            Robert C. Seldon, Esq.
             D.C. Bar No. 245100

                /s/
            _____
            Molly E. Buie, Esq.
             D.C. Bar No. 483767

            Robert C. Seldon & Associates, P.C.
            1319 F Street, N.W., Suite 200
            Washington, D.C. 20004
            Telephone: (202) 955-6968

            Counsel for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Margaret R. Stephens

**DEFENDANTS**

Steve Preston, Secretary, U.S. Dept. of Housing and Urban Development

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert C. Seldon, Esq.; Molly E. Buie, Esq.
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. *Antitrust***

☐ 410 Antitrust

**○ B. *Personal Injury/Malpractice***

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. *Administrative Agency Review***

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. *General Civil (Other)*** OR **○ F. *Pro Se General Civil***

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ◉ H. *Employment Discrimination*<br><br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ◉ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Discrimination, retaliation and hostile work environment arising under Title VII of the Civil Rights Act, 42 U.S.C. sec. 2000e-16

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 300,000.00    Check YES only if demanded in complaint
JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE June 26, 2008    SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.